# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN GREEN, | : | Civil No. 3:16-cv-2367 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| CAPTAIN KLINEFETTER, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Kevin Green ("Green"), an inmate housed at the Benner Township State Correctional Institution, Bellefonte, Pennsylvania, ("SCI-Benner Township"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The remaining Defendants are Correctional Officer Kissell, Captain Klinefelter, and Lieutenant Nixon. Presently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 47). For the reasons set forth below, the Court will grant the motion.

## I. Allegations of the Complaint

In December 2015, Patricia McDuffie visited Green at SCI-Benner Township. (Doc. 1, p. 3). Defendants Klinefelter, Kissell, and Nixon allegedly detained Green following the visit based on a belief that Ms. McDuffie smuggled Suboxone into the prison and provided it to Green. (*Id.* at pp. 3, 5). Green alleges that Defendants Klinefelter, Kissell, and Nixon

cuffed him to a bed in a psychiatric observation cell for 96 hours, forced him to eat food laced with laxatives, observed his bowel movements and urination, and subjected him to an X-ray, in an attempt to locate evidence of Suboxone. (*Id.*).

## II. Statement of Undisputed Facts[1]

The Pennsylvania Department of Corrections ("DOC") has a process for inmate discipline that provides a system of appeals and sanctions for misconduct. (Doc. 49, Statement of Material Facts, ¶ 2; Doc. 49-2, Declaration of Zachary Moslak, Hearing Examiner for the DOC, ¶ 4). Pursuant to Administrative Directive 801 ("DC-ADM 801"), once an inmate is found guilty of a misconduct charge, he may appeal the decision to the Program Review Committee ("PRC"), the Superintendent, and finally to the Office of the Chief Hearing Examiner. (Doc. 49 ¶ 3; Doc. 49-2 ¶ 7; Doc. 49-1).

Green was issued misconduct number B783463 for possession of contraband and related offenses. (Doc. 49 ¶ 4; Doc. 49-4, pp. 2-3). On December 31, 2015, a hearing

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. *See id.* Unless otherwise noted, the factual background herein derives from the Defendants' Rule 56.1 statements of material facts. (Doc. 49). Green did not file a response to Defendants' statement of material facts. The Court accordingly deems the facts set forth by Defendants to be undisputed. *See* LOCAL RULE OF COURT 56.1. (*See also* Doc. 53, ¶ 2(b)) (advising Green that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted).

2

examiner found Green guilty of the misconduct charges. (Doc. 49-4, pp. 2-3). The hearing examiner sanctioned Green with placement in disciplinary custody and loss of visiting privileges. (*Id.* at p. 3). On January 28, 2016, Green appealed the hearing examiner's decision. (Doc. 49-4, p. 9). On March 2, 2016, the Program Review Committee rejected Green's appeal of this misconduct as untimely. (Doc. 49 ¶ 5; Doc. 49-2 ¶ 8; Doc. 49-4, p. 8).

## III. <u>Legal Standard</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S.

at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe

it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. Discussion

### A. Exhaustion of Administrative Review

Defendants argue that Green failed to properly exhaust his administrative remedies prior to filing the instant action. (Doc. 48, pp. 5-7). Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding

5

that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). Finally, whether an inmate has properly exhausted administrative remedies is a question of law that is to be determined by the Court, even if that determination requires the resolution of disputed facts. *See Small v. Camden County*, 728 F.3d 265, 268 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).[2]

---

[2] In accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Court placed the parties on notice that it would consider exhaustion in its role as fact finder and afforded the parties the opportunity to be heard under *Small*, 728 F.3d at 268. (Doc. 57).

The Pennsylvania Department of Corrections has an appeal process through which an inmate can appeal a finding of guilt at a misconduct hearing. Pursuant to DC-ADM 801, if a misconduct is issued to an inmate, a hearing examiner will hold a misconduct hearing. (Doc. 49 ¶ 3; Doc. 49-3, PA. DEP'T OF CORR., Policy Statement, DC-ADM 801, Inmate Discipline, Section 3.A.1). If the inmate is found guilty of a misconduct charge, he may appeal the decision to the Program Review Committee within fifteen calendar days of the hearing. (Doc. 49-3, DC-ADM 801, Section 5.A.1). If the inmate is dissatisfied with the PRC's response, he may appeal to the Facility Manager of the facility within seven calendar days of receipt of the written PRC decision. (Doc. 49-3, DC-ADM 801, Section 5.B.1). The inmate may then file a further appeal to the Office of the Chief Hearing Examiner within seven calendar days of receipt of the Facility Manager's decision. (Doc. 49-3, DC-ADM 801, Section 5.C.3). Once all of these steps are pursued, an inmate will be deemed to have exhausted administrative remedies.

The record reflects that Green was issued misconduct number B783463 for possession of contraband and related offenses. (Doc. 49 ¶ 4; Doc. 49-4, pp. 2-3). On December 31, 2015, a hearing examiner conducted a hearing and ultimately found Green guilty of the misconduct charges. (Id.). On January 28, 2016, Green appealed the hearing examiner's decision. (Doc. 49-4, p. 9). On March 2, 2016, the PRC rejected Green's appeal of this misconduct as untimely, as it was not filed within fifteen calendar days of the

hearing. (Doc. 49-4, p. 8, citing DC-ADM 801, Section 5.A.1). There is no evidence that Green further appealed the misconduct to the Facility Manger or the Office of the Chief Hearing Examiner.

The PLRA mandates that inmates properly exhaust their administrative remedies before filing suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). It is well-settled that administrative remedies must be exhausted *prior* to the initiation of suit. *See Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit."); *Millbrook v. United States*, 8 F.Supp.3d 601, 611 (M.D. Pa. 2014) ("Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. '[E]xhaustion must occur prior to filing suit, not while the suit is pending.'") (citations omitted). Green did not do so in this case. After the hearing examiner found Green guilty of the misconduct charges, he filed an appeal to the PRC. The PRC rejected the appeal of the misconduct as untimely. The record reflects that Green failed to further appeal to the Facility Manager or the Office of the Chief Hearing Examiner. Green has not presented any evidence to refute these facts. (*See* Doc. 54).

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. *See,*

8

*e.g., Camp*, 219 F.3d at 281; *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). Recently, the Third Circuit Court of Appeals has held that "a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion." *Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019). The record simply does not support a finding that the administrative process was unavailable to Green. To the contrary, it establishes that Green had ready access to the administrative remedy process. It is clear that Green failed to exhaust administrative remedies before initiating the instant action. Moreover, Green has not demonstrated that his failure to fully pursue such administrative relief should be excused.

The undisputed evidence establishes that Green did not fully exhaust the available administrative remedies prior to initiating this action. Thus, as a threshold matter, Green's claims are barred on administrative exhaustion grounds. Beyond this threshold concern, there are separate, and independent, substantive flaws with Green's claims against Defendants. These deficiencies are discussed below.

### B. Claims against Klinefelter, Kessel, and Nixon

Defendants Klinefelter, Kessel, and Nixon argue that Green fails to state a claim against them because they lack personal involvement in the alleged wrongs. (Doc. 48, pp.

9

7-9). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

Green states that Defendants Klinefelter and Kessel are "the higher officers, so they let the lower officers [escort him to the security lock-in hole]." (Doc. 49-1, Deposition of Kevin Green ("Green Dep."), p. 16). Green concedes that Defendants Klinefelter and Kessel did not escort him to the security lock-in hole or the psychiatric observation cell. (*Id.* at pp. 16-17). Green further concedes that Defendants Klinefelter and Kessel are "at the top of the chain of command. They give the orders to do what happened. . . [and,] [t]hey

10

were in charge." (*Id.* at p. 19). It appears that Green attempts to hold Defendants Klinefelter and Kessel liable based on their supervisory roles. Any attempt by Green to hold these Defendants liable for the actions of their subordinates is essentially an assertion of *respondeat superior* liability which seeks to hold them liable based on their supervisory roles. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207. Green has failed to establish that Defendants Klinefelter and Kessel were personally involved in the alleged violation of his constitutional rights. Accordingly, Defendants Klinefelter and Kessel are entitled to judgment in their favor to the extent that Green's claims against them rely on a *respondeat superior* theory of liability.

With respect to Defendant Nixon, Green asserts that she escorted him to the area where the observation cells are located. (Doc. 49-1, Green Dep., p. 16). Green has failed to present any evidence that Defendant Nixon had any further interaction with him once he was placed in the observation cell. Green admits that Defendant Nixon was not one of the guards who observed him while he was in the observation cell. (Doc. 49-1, Green Dep., pp. 20-21). Consequently, Defendants' motion for summary judgment based on the lack of personal involvement of Defendant Nixon will be granted.

### C.  Eighth Amendment Claim

Green appears to argue that his placement in a psychiatric observation cell constituted cruel and unusual punishment in violation of his Eighth Amendment rights. In

11

order to state an Eighth Amendment claim, a plaintiff must establish both that he has been denied "the minimal civilized measure of life's necessities" and that defendants had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To violate the Eighth Amendment's prohibition of cruel and unusual punishment, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834 (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. *Hudson v. McMillen*, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions—considered alone constitutionally insufficient—may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (identifying the denial of basic human needs as "food, clothing, shelter, sanitation, medical care and personal safety").

In applying this test, the Supreme Court acknowledges that the Eighth Amendment does not mandate that prisons be free of discomfort. *Hudson*, 503 U.S. at 9. Placement in administrative segregation, alone, is insufficient to constitute cruel and unusual punishment.

12

*See Gibson v. Lynch*, 652 F.2d 348, 352 (3d Cir. 1981), *cert. denied*, 462 U.S. 1137 (1983) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment"). In assessing whether an inmate's placement in segregation violates the Eighth Amendment, courts must look to the "duration and conditions of segregated confinement" and the "touchstone is the health of the inmate." *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992), *superseded on other grounds by statute*, Prison Litigation Reform Act, 42 U.S.C. § 1997, *et seq*. Furthermore, placement in a dry cell for the purpose of searching excrement for contraband is not, in and of itself, unconstitutional. *Gilblom v. Gillipsie*, 435 F. App'x 165, 168 (3d Cir. 2011); *see also Muchler v. Smith Bail Bonds, LLC*, No. 3:15-cv-00093, 2016 WL 3035303 (M.D. Pa. May 26, 2016) (prisoner's claim that he was held in a dry cell for three days with limited food and beverage service failed to state a claim of constitutional dimension).

Green has not presented any evidence that he was deprived any basic human needs during his temporary placement in the observation cell. The record reflects that Green was placed in the observation cell because it was suspected that he swallowed drugs during a contact visit. He was observed at all times by prison officials and removed from the cell after four days. Green acknowledges that a guard constantly monitored the observation cells, guards checked on him every four hours, and medical staff monitored him. (Doc. 49-1, Green Dep., pp. 21, 24-25). During his four days in the observation cell, Green admits

13

that he was provided food on a daily basis. (*Id.* at p. 18). Because prison officials suspected that Green ingested drugs, he was provided a toilet pan so they could search his excrement for contraband. (*Id.*). Green states that he suffered digestive issues while in the cell, and that the cell was cleaned after these episodes. (*Id.* at p. 22). Additionally, although Green states that he experienced numbness and pain in his wrist from being handcuffed, he never asked for the handcuffs to be loosened, and never requested to see medical staff after he was released from the observation cell. (*Id.* at pp. 24-26). Green had no other complaints with respect to the conditions in the observation cell. Green has not presented any evidence that he was deprived of "the minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298; *see also Adderly v. Ferrier*, 419 F. App'x 135, 140 (3d Cir. 2011) (holding that denial of access to clothing, toiletries, legal mail, a pillow, a mattress, and showers for seven days did not "constitute a denial of the 'minimal civilized measures of life's necessities'") (quoting *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995)); *Gilblom*, 435 F. App'x at 169 (affirming summary judgment in favor of two corrections officers directly involved, and with personal involvement in inmate's confinement in dry cell, and finding that the need to ensure that contraband would not be brought into the prison justified inmate's placement in observation cell); *Daniels v. Pitkin*, No. 3:14-cv-2383, 2017 WL 890090, at *3-4 (M.D. Pa. Mar. 6, 2017) (granting summary judgment in favor of defendants who, while knowing of the inmate's dry cell placement, were unaware of his

claims that he was not being allowed to wash his hands or of his concerns that urine and fecal matter was accumulating in the cell). As stated, Green was undisputedly provided food, a toilet pan, constant observation, and medical care. The Court finds that Green has failed to establish an Eighth Amendment claim related to his conditions of confinement in the psychiatric observation cell.

Additionally, Green has failed to establish that any of the Defendants acted with deliberate indifference. As stated, Green was placed in the observation cell because prison officials believed he ingested drugs. Green's placement in the observation cell allowed officials to monitor him at all times in order to ensure his safety and to ensure the gastrointestinal passage of the suspected contraband. In light of these facts, there is an insufficient evidentiary basis upon which a reasonable jury could conclude that Defendants acted with deliberate indifference. The Court will grant summary judgment in favor of Defendants on the Eighth Amendment claim.[3]

---

[3] In his brief in opposition to Defendants' motion for summary judgment, Green attempts to assert a retaliation claim for the first time. (Doc. 54). As a general rule, courts may decline to consider arguments raised for the first time in an opposition brief. *See Holland v. Simon Property Group, Inc.*, 495 F. App'x 270, 272 n.4 (3d Cid. 2012) (finding that the District Court correctly declined to consider claims of retaliation asserted for the first time in plaintiff's summary judgment opposition brief); *see also Grayson v. Mayview State. Hosp.*, 293 F.3d 103, 109 n.9 (3d Cir. 2002) (noting that "prisoner plaintiff (or any other plaintiff) should not be able to effectively amend a complaint through any document short of an amended pleading"). As it is inappropriate for Green to raise an additional claim for the first time in his opposition brief, it will not be considered.

## V. Conclusion

Based on the foregoing, the Court will grant Defendants' motion (Doc. 47) and enter summary judgment in their favor. A separate Order shall issue.

Dated: February 18, 2020

Robert D. Mariani
United States District Judge

16